TATIANA S. LITVINENKO, Pro Se
20 Summershade Circle
Piscataway, NJ 08854
267) 968-4228
golubka20@gmail.com

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
NEWARK VICINAGE

| | |
|---|---|
| TATIANA S. LITVINENKO | |
| Plaintiff, | Case No: 1:13-cv-00131-RMB-AMD |
| vs. | |
| TSUREN LLC., SUREN TER-SAAKOV, | FIRST AMENDED COMPLAINT AND JURY DEMAND |
| Defendant | |

Plaintiff, Tatiana Litvinenko, by way of complaint against the Defendants says:

### GENERAL ALLEGATIONS

1. This is an action to correct a fraudulent information return with respect to payments of $96,000.00 purported to be made to Plaintiff pursuant to 26 U.S.C. § 7434.

2. Plaintiffs also bring state law claims against Defendant that are separate from the fraudulent information return claim and only brought in their own capacity.

## JURISDICTION

The jurisdiction of this Court is invoked pursuant to 26 U.S.C. § 7434, 26 USC § 7207, 26 USC § 6721, 28 U.S.C. § 1331, 28 U.S.C. § 1332, 28 U.S.C. § 1340, and 28 U.S.C. § 1391. Plaintiff also invokes this Court's supplemental jurisdiction under 28 U.S.C. § 1367.

## PARTIES

1. Plaintiff, Tatiana Litvinenko is a Citizen of Russia who lives in New Jersey and brings this independent action Pro Se.

2. Defendant, TSUREN LLC. / Suren Ter-Saakov is a Citizen of USA with a business address of New Jersey and domicile residence of the Ukraine at all times relevant to the allegations of this Complaint, is the owner and CEO of TSUREN LLC. He is sued in his individual capacity.

## FACTS

3. The Plaintiff was 22 years old, young and impressionable when she met the much older Defendant upon arriving in the USA for higher education studies on a J-1 Exchange Visa.

2

4. Plaintiff worked for the Defendant as an employee under this program for $12.00 per hour from July of 2006 – November 2006 or a total of five months.

5. Plaintiff and Defendant entered into a romantic relationship almost immediately and at the end of the summer the Defendant requested the Plaintiff to remain in the USA to finish her education. The Defendant promised to thoroughly support the Plaintiff, purchase her a car and pay for all college expenses.

6. Plaintiff was in love, agreed and applied for her F-1 Student Visa which was received in November of 2006. As a condition of her F-1 student visa, Plaintiff was not allowed to work for a US employer and the employment relationship was terminated with the Defendant.

7. The Defendant and Plaintiff were never married but lived together for 5-years.

8. The Defendant promised to marry the Plaintiff and they had a son of this union.

9. English is not the Plaintiffs first language and she trusted and relied heavily upon the Defendant for all important matters relating to business, tax, legal, and social customs. The Defendant was the Plaintiffs major connection to America because he spoke fluent Russian.

3

10. Plaintiff never understood why the Defendant issued her 1099's for 2007, 2008, 2009 for such small amounts of money when she didn't work for him. He was spending far in excess of the amounts stated in the 1099's or somewhere in the range of $75,000 to $100,000.00 in total support.

11. The 1099-MISC for 2007, 2008, and 2009 are not included in this complaint because there were no damages. The Defendant paid the tax liabilities for all of these years.

12. When questioned by Plaintiff concerning this matter of issuing the false 1099-MISC, because the Defendant knew the Plaintiff could not work for a US employer under her F-1 Visa status the Defendant would say "You're not working as an employee for my company so you are not violating your visa", "There is nothing illegal with this because I am paying the taxes", "Everything I'm telling you is the absolute best way to do this", and "I pay for all the bills in this household and this is the way it's got to be".

13. Plaintiff relied on Defendants false assurances that everything had to done in this manner, opened a small company and filed the taxes as the Plaintiff directed. She did not seek the advice of another accountant until after the separation. Only upon consulting another accountant did she become aware of the falsity of the Defendants statements and of their malfeasance.

14. The Plaintiff end the relationship after it became apparent the Defendant had been living a dual life, was dishonest with the Plaintiff because he advised her he was separated, lacked integrity and had no plans to marry the Plaintiff after one year had passed from the finalization of the Defendants divorce from his former wife and the Defendant started dating his ex-wife again.

15. When the Plaintiff learned that the Defendant stated dating his ex-wife again in January of 2011 she advised the Defendant that she wanted to end the relationship. Defendant became enraged and issued the Plaintiff the false 1099-MISC for $96,000.00 in an effort to force the Plaintiff to stay in the relationship.

16. Defendant threatened to call INS, show them the false 1099-MISC and have Plaintiff deported for working in violation of her visa status if she ended the relationship.

17. It is now apparent to the Plaintiff why the Defendant was issuing her the false 1099-MISC in 2007, 2008, and 2009. He was going to use them as blackmail tools if needed in the future.

18. Out of personal malice, bitter resentment, or a vindictive spirit, the Defendant intentionally issued the Plaintiff the false 1099-MISC for 2010.

19. In retaliation for ending the relationship and in an effort to lower his gross income for the taxable year the Defendant refused to issue a corrected 1099-MISC. A copy of the Form 1099-MISC is hereto attached as Exhibit "A".

20. The Plaintiff never worked for the Defendant in 2010 and there was never a contract of employment between the parties implied or otherwise because the Plaintiff went to school full time, took care of the house and their new born son after college.

21. At the time the Defendant issued the fraudulent 1099-MISC for 2010 he and the Plaintiff were cohabitating and he knew all monies provided were for the payments of household bills and support for the both of them. All monies provided to the Plaintiff while the couple cohabitated were in the form of a check, but Plaintiff was never an employee or contractor for the Defendants Company. The Defendant always provided business checks to the Plaintiff for household bills and support.

22. Plaintiff contacted the IRS and her emotional distress was made even worse when she learned that not only had the Defendant filed the Form 1099-MISC, but he had characterized Plaintiff to the IRS as an independent contractor with respect to that payment, apparently as a part of a tax-

6

avoidance scheme and in violation of her F-1 Visa status which doesn't permit the Plaintiff to work.

23. The Plaintiff tried repeatedly for over a year to get the Defendant to change the fraudulent 1099-MISC or to pay the tax liability due.

24. Defendant knew this form 1099-MISC was false and that this form 1099-MISC would cause Plaintiff to incur substantial income tax liability and other costs for which she was not personally liable.

25. Defendant filed the form 1099-MISC solely for the purpose of personal gain and Plaintiff harassment and thereby intentionally inflicted emotional distress on her.

26. The Defendant has been self-employed business owner for over 10-years and has extensive experience and knowledge regarding the proper use of the form 1099-MISC.

27. No rational or good faith basis exits for issuance of the form 1099-MISC.

28. Plaintiff was advised by the IRS that unless the Defendant issued a corrected 1099-MISC she was liable for the taxes on the $96,000 which are $29,827.00. The Plaintiff has not paid the IRS the monies due.

29. After legal consultantion in the summer of 2012, Plaintiff learned of options to her dilemma via Tax Payer Bill of Rights 2.

7

30. The Plaintiff sent the Defendant a formal demand letter that he either correct the erroneous 1099-MISC or pay the tax amount due. The Defendant has not complied with either request. A copy of the demand letter is hereto attached as Exhibit "B".

31. The Plaintiff sent the Defendant a formal Demand for Verification of "Trade or Business" with the Plaintiff through a natural third party, "Guaranteed Subpoena Service". The Defendant has not complied with the request. A copy of the demand for verification of "Trade or Business" is hereto attached as Exhibit "C".

32. Defendant directly or indirectly organized the misuse of Internal Revenue Service Form 1099-MISC by issuing a false form with the Internal Revenue Service a violation of 26 USC § 7434, 26 USC § 6721 and 26 USC § 7207.

33. The Plaintiff has filed a Form 1040X Amended U.S. Individual Income Tax Return removing the erroneous $96,000.00 and requesting a refund of all monies paid. A copy of the 1040 X is hereto attached as Exhibit "D".

34. The Plaintiff has filed a Form 3949 Information Referral as required by the IRS. A copy of the Form 3949 is hereto attached as Exhibit "E".

35. Pursuant to 26 USC § 7434 (d), a copy of complaint has been filed with the Internal Revenue Service as required.

36. Plaintiff has filed this complaint the follow year after receiving the fraudulent 1099-MISC.

37. As a result of the Defendants actions, Plaintiff has suffered economic, emotional, psychological damage.

## FIRST CAUSE OF ACTION
## FRAUDULENT INFORMATION RETURN 1099-MISC
## (Violation of 26 U.S.C. § 7434)

38. Plaintiff repeats here the allegations of the Complaint as if set forth at length herein.

39. The Form 1099-MISC issued by Defendant to Plaintiff are

40. "information returns" within the meaning of 26 U.S.C. § 7434 and 26 U.S.C. § 6724.

41. Defendant intentionally issued the fraudulent information return form 1099-MISC in bad faith and was motivated out of hostility, spite, and malice towards the Plaintiff. Evidence that Defendant issued the form 1099-MISC in bad faith include:
    a. Defendants' extensive experience as a successful business man where he both received and provided form 1099-MISC for over 10-years.
    b. Plaintiff was not engaged in a "Trade or Business" with the Defendants company TSUREN, no written contract was ever entered into with the Defendants

9

    company TSUREN, implied or otherwise, nor was the Plaintiff ever an employee of TSUREN.

  c. The Plaintiff and Defendant were cohabiting in 2011, and it wasn't until after the Plaintiff requested a separation that the defendant issued the fraudulent form for $96,000 when he had never done anything of this nature in the past.

  d. Defendant knew the Plaintiff was in school full time, took care of the house, raised their son 2-year old son and knew it was impossible that Plaintiff could have worked for him.

  e. The lack of any rational or good faith basis for issuance of the Form 1099-MISC.

  f. This was also done with the intent of unjust enrichment and tax savings of the part of the Defendant by defrauding or hiding the Defendants true income from the IRS at the expense of the Plaintiff.

  g. Defendants intended that the filing of the Form 1099-MISC would result in Plaintiff incurring damages.

  h. Defendant intended to gain leverage over Plaintiff related to ongoing disputes among the parties.

42. After numerous discussions and correspondence regarding the correction of the fraudulent 1099-MISC form, the Plaintiff sends the Defendant a final demand letter certified mail,

return receipt on December 9, 2012 for correction of the fraudulent 1099-MISC or the payment of the tax liability due. The demand letter went unanswered.

43. On December 24, 2012 the Defendant was sent a demand letter for proof or verification of "Trade or Business" with the Plaintiff through a third-party process server company. A notarized certificate of service was received from Guaranteed Subpoena Service. The demand letter went unanswered which constitutes proof of deceitfulness or bad faith in connection with filing an information return.

44. The Defendants' conduct resulted in Plaintiff having a false a tax liability in the amount of $29,827.00 while attending college full-time and unemployed.

45. As a direct and foreseeable consequence of these actions Plaintiff has suffered economic loss, psychological harm, physical harm, emotional trauma and loss of family time.

## SECOND CAUSE OF ACTION
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

46. Plaintiff repeats here the allegations of the Complaint as if set forth at length herein.

47. Defendant willfully files a fraudulent information return form 1099-MISC about Plaintiff calculated to produce fear of deportation towards the Immigration & Naturalization Services (INS) based upon the Plaintiffs F-1 student visa

11

status and her inability to work while in America studying. Additionally Defendant leaves the Plaintiff and their 3-year old son destitute and with no viable means of support.

48. In combination with conduct described above, these actions evidenced an extreme and outrageous behaviors pursued with the intent to harass Plaintiff and to cause her to suffer severe emotional distress.

49. Defendants' conduct had the direct and foreseeable consequence of marking Plaintiff for deportation by the INS in violation of her F-1 student visas status.

50. Despite whatever exoneration Plaintiff might receive, Defendants' conduct will continue to have deleterious effects on Plaintiff, who will forever be associated with the false allegations advanced by Defendants.

51. As a result of Defendants' intentional and outrageous conduct, Plaintiff has suffered and continues to suffer from emotional and mental conditions generally recognized and diagnosed by trained professionals.

52. As a direct and foreseeable consequence of those conditions, Plaintiff has suffered, and continues to suffer, emotional, mental, and psychological injury which includes but is not limited to; Loss of Appetite, Depression, Uncontrolled Crying, Headaches, Loss of Enjoyment of Life, Fear,

Frustration, Helplessness, Impairment of Relationships, Sleeplessness, Stress, and Lack of Trust.

### THIRD CAUSE OF ACTION
### NEGLIGENCE

53. Plaintiff repeats here the allegations of the Complaint as if set forth at length herein.
54. At the time of the actions described above, Defendant owed Plaintiff a duty to use due care with respect to any filings of information return 1099-MISC to the IRS.
55. At the time the Defendant made his information return filings, the Defendant knew or should have known that such actions were false and inflammatory and likely to cause Plaintiff harm.
56. At the time Defendant committed the acts and omissions above, he knew or should have known that they violated 26 USC § 7434, INS regulations, New Jersey Tax regulations and were likely to cause Plaintiff harm.
57. In committing the aforementioned acts and /or omissions, Defendant negligently breached said duties to use due care which directly and proximately resulted in the injuries and damages to the Plaintiff which includes but is not limited to Loss of Appetite, Depression, Uncontrolled Crying, Headaches, Loss of Enjoyment of Life, Fear, Frustration,

Helplessness, Impairment of Relationships, Sleeplessness, Stress, and Lack of Trust.

### FOURTH CAUSE OF ACTION
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

58. Plaintiff repeats here the allegations of the Complaint as if set forth at length herein.
59. Defendant acted to manufacture false information returns to the IRS and to conceal the evidence of Plaintiffs' innocence by not filing a corrected 1099-MISC which he knew was false.
60. The Defendants conduct violated IRC § 7434 and departed from Internal Revenue Code policies and procedures and the New Jersey Division of Taxation guidelines.
61. The Defendant was negligent in engaging in this conduct, from which it was reasonably foreseeable that Plaintiff would suffer emotional and psychological injury.
62. As a direct and foreseeable consequence of Defendants conduct, Plaintiff has suffered and continues to suffer from diagnosable emotional and mental conditions causing emotional, mental, and physical injury which includes but is not limited to Loss of Appetite, Depression, Uncontrolled Crying, Headaches, Loss of Enjoyment of Life, Fear, Frustration, Helplessness, Impairment of Relationships, Sleeplessness, Stress, and Lack of Trust.

**PUNITIVE DAMAGES**

63. Plaintiff repeats here the allegations of the Complaint as if set forth at length herein.

64. The acts and omissions of Defendants as set forth herein were intentional, fraudulent, malicious, willful and wanton and done with a reckless and wanton disregard of the rights of the Plaintiff.

65. Plaintiff is entitled to recover punitive damages pursuant to N.J.S.A. 2A:15-5.10 as a result of Defendants' intentional, fraudulent, malicious, willful and wanton acts and omissions as set forth herein.

**WHEREFORE**, Plaintiff seeks relief and judgment against the Defendant, including, but not limited to:

1. An award of damages in an action brought under 26 U.S.C. § 7434, subsection (a) shall include a finding of the correct amount which should have been reported in the information return;

2. An award of statutory minimum of $5000.00 pursuant to 26 U.S.C. § 7434;

3. Initial Damage request by Plaintiff for each injury based upon awards of actual cases is a follows;
    a. Loss of Appetite - $60,000.00

15

   b. Depression – $100,000.00

   c. Uncontrolled Crying – $50,000.00

   d. Headaches – $50,000.00

   e. Loss of Enjoyment of Life – $200,000.00

   f. Fear Deportation – $100,000.00

   g. Frustration – $30,000.00

   h. Helplessness – $60,000.00

   i. Impairment of Relationships – $75,000.00

   j. Sleeplessness – $100,000.00

   k. Stress – $50,000.00

   l. Lack of Trust – $50,000.00

4. An award of compensatory damages and punitive damages along with prejudgment and post-judgment interest, in favor of Plaintiff against Defendants in an final amount to be determined at trial against the individual Defendant, based on the intentional and malicious acts of said Defendant, which are allowed by statutes pleaded herein or as permitted by common law and rules;

5. Require Defendant to disgorge his ill-gotten gains that were derived from the activities set forth in this Complaint plus pre-judgment interest;

6. An award of reasonable counsel and attorneys' fees and all costs of suit and interest thereon;

7. Any other award and equitable relief allowed by statute or pursuant to the law or equitable and just power of this Court to which Plaintiff is entitled.

### JURY DEMAND

Plaintiff hereby demands trial by jury of all issues in this action.

DATED: March 12, 2013

_____
TATIANA S. LITVINENKO, Pro Se